Case 17-16087-mdc    Doc 25-2    Filed 01/26/18    Entered 01/26/18 18:38:26    Desc
Case 17-16087-mdc    Claim 5-2    Filed 01/23/18    Desc Main Document    Page 1 of 12
Exhibit A    Proof of Claim    Page 1 of 43

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | MELONY L. BROWN F/K/A MELONY GAMBLE |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | EASTERN     District of Pennsylvania (State) |
| Case Number | 17-16087-mdc |

## Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157, and 3571.
Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE") <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From Whom? _____ |

| | | |
|---|---|---|
| 3. | Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> SETERUS, INC. <br><br> P.O. BOX 1047 <br><br> HARTFORD        CT        06143 <br> City        State        Zip <br><br> Contact Phone    (866) 570-5277 <br><br> Contact Email _____ <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one) _____ | **Where should payments to the creditor be sent?** (if different) <br><br> SETERUS, INC. <br><br> P.O. BOX 1047 <br><br> HARTFORD        CT        06143 <br> City        State        Zip <br><br> Contact Phone    (866) 570-5277 <br><br> Contact Email _____ |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

## Part 2: Give Information about the Claim as of the Date the Case Was Filed

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 6261 |

| 7. | How much is the claim? | $56,435.37 . Does this amount include interest or other charges?<br>☐ No<br>☒ Yes.    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach any document supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money Loaned |

| 9. | Is all or part of the claim secured? | ☐ No<br>☒ Yes.    The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe:    4238 NORTH FRANKLIN STREET, PHILADELPHIA, PA 19140-2223<br><br>**Basis for perfection:**    Recorded Security Instrument<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ _____<br>**Amount of the claim that is secured:**    $ 56,435.37<br>**Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ 26,075.32<br><br>**Annual Interest Rate** (when case was filed) 9.3%<br>☒ Fixed<br>☐ Variable |

| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes.    Amount necessary to cure any default as of the date of the petition. $ _____ |

| 11. | Is this claim subject to a right to setoff? | ☒ No<br>☐ Yes.    Identify the property: _____ |

| 12. | Is all or part of the claim | ☒    No |

| | | |
|---|---|---|
| **entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |
| | *Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157 and 3571.** | Check the appropriate box:<br><br>☐ I am the creditor.<br><br>☒ I am the creditor's attorney or authorized agent.<br><br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br><br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |

Executed on date   January 22, 2018
                       MM / DD / YYYY

/s/ Thomas Song, Esquire
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Thomas Song, Esq., Id. No.89834 | | |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400, One Penn Center Plaza | | |
| | Philadelphia, PA 19103 | | |
| Contact phone | 215-563-7000 | Email | Thomas.Song@phelanhallinan.com |

Case 17-16087-mdc    Doc 25-2    Filed 01/26/18    Entered 01/26/18 18:38:26    Desc
Case 17-16087-mdc    Claim 25-2    Filed 01/23/18    Desc Main Document    Page 4 of 12
Exhibit A    Proof of Claim    Page 4 of 43

## Mortgage Proof of Claim Attachment (12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions**

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|
| Case Number: 17-16087-mdc | Principal balance: | $32,386.24 | Principal & interest due: | $17,699.85 | Principal & interest: | $280.95 |
| Debtor 1: MELONY L. BROWN F/K/A MELONY GAMBLE | Deferred Principal: | $0.00 | Prepetition fees due: | $2,892.80 | Monthly escrow: | $89.50 |
| Debtor 2: | Interest due: | $16,121.12 | Escrow deficiency for funds advanced: | $5,343.74 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: 6261 | Fees, costs due: | $2,892.80 | Projected escrow shortage: | $447.46 | Total monthly payment: | $370.45 |
| Creditor: FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE") | Escrow deficiency for funds advanced | $5,343.74 | Less funds on hand: | - $308.53 | | |
| Servicer: SETERUS, INC. | Less total funds on hand: | - $308.53 | Total prepetition arrearage: | $26,075.32 | | |
| Fixed accrual/daily simple interest/other: Fixed Accrual | Total debt: | $56,435.37 | | | | |

### Part 5: Loan Payment History from First Date of Default:

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin. Int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 07/15/2008 | $352.30 | | | Payment Due | | $1,056.90 | | | | | | $33,603.70 | | ($4.85) | $258.72 | $56.22 |
| 07/25/2008 | | | $16.86 | Late Charge | | $1,056.90 | | | | | ($16.86) | $33,603.70 | | ($4.85) | $275.58 | $56.22 |
| 08/14/2008 | | $4.85 | | Credit to Escrow | | $1,056.90 | | | | | | $33,603.70 | | ($4.85) | $275.58 | $56.22 |
| 08/14/2008 | | $416.00 | | Payment Applied | 05/15/2008 | $704.60 | $20.52 | $260.43 | $71.35 | | $63.70 | $33,583.18 | | $66.50 | $275.58 | $119.92 |
| 08/15/2008 | $352.30 | | | Payment Due | | $1,056.90 | | | | | | $33,583.18 | | $66.50 | $275.58 | $119.92 |
| 08/25/2008 | | | $16.86 | Late Charge | | $1,056.90 | | | | | ($16.86) | $33,583.18 | | $66.50 | $292.44 | $119.92 |
| 09/15/2008 | $352.30 | | | Payment Due | | $1,409.20 | | | | | | $33,583.18 | | $66.50 | $292.44 | $119.92 |
| 09/25/2008 | | | $16.86 | Late Charge | | $1,409.20 | | | | | ($16.86) | $33,583.18 | | $66.50 | $309.30 | $119.92 |
| 10/07/2008 | | | | Credit to Fees/Charges | | $1,409.20 | | | | $63.70 | ($63.70) | $33,583.18 | | $66.50 | $245.60 | $56.22 |
| 10/15/2008 | $352.30 | | | Payment Due | | $1,761.50 | | | | | | $33,583.18 | | $66.50 | $245.60 | $56.22 |
| 10/25/2008 | | | $16.86 | Late Charge | | $1,761.50 | | | | | ($16.86) | $33,583.18 | | $66.50 | $262.46 | $56.22 |
| 11/15/2008 | $352.30 | | | Payment Due | | $2,113.80 | | | | | | $33,583.18 | | $66.50 | $262.46 | $56.22 |
| 12/15/2008 | $352.30 | | | Payment Due | | $2,466.10 | | | | | | $33,583.18 | | $66.50 | $262.46 | $56.22 |
| 01/15/2009 | $352.30 | | | Payment Due | | $2,818.40 | | | | | | $33,583.18 | | $66.50 | $262.46 | $56.22 |
| 02/04/2009 | | | $437.21 | Escrow Advance - Taxes | | $2,818.40 | | | ($437.21) | | | $33,583.18 | | ($370.71) | $262.46 | $56.22 |
| 02/15/2009 | $352.30 | | | Payment Due | | $3,170.70 | | | | | | $33,583.18 | | ($370.71) | $262.46 | $56.22 |
| 03/15/2009 | $352.30 | | | Payment Due | | $3,523.00 | | | | | | $33,583.18 | | ($370.71) | $262.46 | $56.22 |
| 03/25/2009 | | | $560.26 | Escrow | | $3,523.00 | | | ($560.26) | | | $33,583.18 | | ($930.97) | $262.46 | $56.22 |

| Date | | | Description | Date | Amount | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Advance - Insurance | | | | | | | | | | | |
| 04/15/2009 | $352.30 | | Payment Due | | $3,875.30 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 05/15/2009 | $352.30 | | Payment Due | | $4,227.60 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 06/15/2009 | $352.30 | | Payment Due | | $4,579.90 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 07/15/2009 | $352.30 | | Payment Due | | $4,932.20 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 08/15/2009 | $352.30 | | Payment Due | | $5,284.50 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 09/15/2009 | $352.30 | | Payment Due | | $5,636.80 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 10/15/2009 | $352.30 | | Payment Due | | $5,989.10 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 11/15/2009 | $352.30 | | Payment Due | | $6,341.40 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 12/15/2009 | $352.30 | | Payment Due | | $6,693.70 | | | | | | $33,583.18 | ($930.97) | $262.46 | $56.22 |
| 12/31/2009 | | | Credit to Escrow | | $6,693.70 | | | | $0.24 | | $33,583.18 | ($930.73) | $262.46 | $56.22 |
| 01/15/2010 | $352.30 | | Payment Due | | $7,046.00 | | | | | | $33,583.18 | ($930.73) | $262.46 | $56.22 |
| 02/03/2010 | | $437.21 | Escrow Advance - Taxes | | $7,046.00 | | | | ($437.21) | | $33,583.18 | ($1,367.94) | $262.46 | $56.22 |
| 02/15/2010 | $352.30 | | Payment Due | | $7,398.30 | | | | | | $33,583.18 | ($1,367.94) | $262.46 | $56.22 |
| 03/15/2010 | $352.30 | | Payment Due | | $7,750.60 | | | | | | $33,583.18 | ($1,367.94) | $262.46 | $56.22 |
| 03/25/2010 | | $16.86 | Late Charge | | $7,750.60 | | | | ($16.86) | | $33,583.18 | ($1,367.94) | $279.32 | $56.22 |
| 04/15/2010 | $352.30 | | Payment Due | | $8,102.90 | | | | | | $33,583.18 | ($1,367.94) | $279.32 | $56.22 |
| 05/11/2010 | | $530.26 | Escrow Advance - Insurance | | $8,102.90 | | | | ($530.26) | | $33,583.18 | ($1,898.20) | $279.32 | $56.22 |
| 05/15/2010 | $352.30 | | Payment Due | | $8,455.20 | | | | | | $33,583.18 | ($1,898.20) | $279.32 | $56.22 |
| 06/15/2010 | $352.30 | | Payment Due | | $8,807.50 | | | | | | $33,583.18 | ($1,898.20) | $279.32 | $56.22 |
| 07/15/2010 | $352.30 | | Payment Due | | $9,159.80 | | | | | | $33,583.18 | ($1,898.20) | $279.32 | $56.22 |
| 07/26/2010 | | $16.86 | Late Charge | | $9,159.80 | | | | ($16.86) | | $33,583.18 | ($1,898.20) | $296.18 | $56.22 |
| 08/15/2010 | $352.30 | | Payment Due | | $9,512.10 | | | | | | $33,583.18 | ($1,898.20) | $296.18 | $56.22 |
| 09/15/2010 | $352.30 | | Payment Due | | $9,864.40 | | | | | | $33,583.18 | ($1,898.20) | $296.18 | $56.22 |
| 10/15/2010 | $352.30 | | Payment Due | | $10,216.70 | | | | | | $33,583.18 | ($1,898.20) | $296.18 | $56.22 |
| 10/15/2010 | $264.00 | | Funds Received | | $10,216.70 | | | | | $264.00 | $33,583.18 | ($1,898.20) | $296.18 | $320.22 |
| 11/15/2010 | $352.30 | | Payment Due | | $10,569.00 | | | | | | $33,583.18 | ($1,898.20) | $296.18 | $320.22 |
| 11/16/2010 | $264.00 | | Funds Received | | $10,569.00 | | | | | $264.00 | $33,583.18 | ($1,898.20) | $296.18 | $584.22 |
| 11/17/2010 | | | Payment Applied | 06/15/2008 | $10,216.70 | $20.68 | $260.27 | $71.35 | ($352.30) | | $33,562.50 | ($1,826.85) | $296.18 | $231.92 |
| 12/15/2010 | $352.30 | | Payment Due | | $10,569.00 | | | | | | $33,562.50 | ($1,826.85) | $296.18 | $231.92 |
| 12/31/2010 | | | Credit to Escrow | | $10,569.00 | | | | $0.52 | | $33,562.50 | ($1,826.33) | $296.18 | $231.92 |
| 01/05/2011 | | | Credit to Fees/Charges | | $10,569.00 | | | | $85.00 | ($85.00) | $33,562.50 | ($1,826.33) | $296.18 | $146.92 |
| 01/13/2011 | $352.30 | | Payment Applied | 07/15/2008 | $10,216.70 | $20.84 | $260.11 | $71.35 | | | $33,541.66 | ($1,754.98) | $211.18 | $146.92 |
| 01/13/2011 | $264.00 | | Funds Received | | $10,216.70 | | | | | $264.00 | $33,541.66 | ($1,754.98) | $211.18 | $410.92 |
| 01/15/2011 | $352.30 | | Payment Due | | $10,569.00 | | | | | | $33,541.66 | ($1,754.98) | $211.18 | $410.92 |
| 01/25/2011 | | $16.86 | Late Charge | | $10,569.00 | | | | ($16.86) | | $33,541.66 | ($1,754.98) | $228.04 | $410.92 |
| 02/07/2011 | | $437.21 | Escrow Advance - Taxes | | $10,569.00 | | | | ($437.21) | | $33,541.66 | ($2,192.19) | $228.04 | $410.92 |
| 02/15/2011 | $352.30 | | Payment Due | | $10,921.30 | | | | | | $33,541.66 | ($2,192.19) | $228.04 | $410.92 |
| 03/15/2011 | $352.30 | | Payment Due | | $11,273.60 | | | | | | $33,541.66 | ($2,192.19) | $228.04 | $410.92 |
| 04/12/2011 | | $580.26 | Escrow Advance - Insurance | | $11,273.60 | | | | ($580.26) | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 04/15/2011 | $352.30 | | Payment Due | | $11,625.90 | | | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 05/15/2011 | $352.30 | | Payment Due | | $11,978.20 | | | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |

| Date | | | Description | Balance | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/15/2011 | $352.30 | | Payment Due | $12,330.50 | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 07/15/2011 | $352.30 | | Payment Due | $12,682.80 | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 08/15/2011 | $352.30 | | Payment Due | $13,035.10 | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 09/15/2011 | $352.30 | | Payment Due | $13,387.40 | | | | $33,541.66 | ($2,772.45) | $228.04 | $410.92 |
| 10/03/2011 | | | Credit to Escrow | $13,387.40 | | $0.39 | | $33,541.66 | ($2,772.06) | $228.04 | $410.92 |
| 10/15/2011 | $352.30 | | Payment Due | $13,739.70 | | | | $33,541.66 | ($2,772.06) | $228.04 | $410.92 |
| 11/15/2011 | $352.30 | | Payment Due | $14,092.00 | | | | $33,541.66 | ($2,772.06) | $228.04 | $410.92 |
| 11/29/2011 | | | Credit to Escrow | $14,092.00 | | $408.52 | ($408.52) | $33,541.66 | ($2,363.54) | $228.04 | $2.40 |
| 12/15/2011 | $352.30 | | Payment Due | $14,444.30 | | | | $33,541.66 | ($2,363.54) | $228.04 | $2.40 |
| 12/31/2011 | | | Credit to Escrow | $14,444.30 | | $26.13 | | $33,541.66 | ($2,337.41) | $228.04 | $2.40 |
| 01/15/2012 | $352.30 | | Payment Due | $14,796.60 | | | | $33,541.66 | ($2,337.41) | $228.04 | $2.40 |
| 01/26/2012 | | $437.21 | Escrow Advance - Taxes | $14,796.60 | | ($437.21) | | $33,541.66 | ($2,774.62) | $228.04 | $2.40 |
| 02/15/2012 | $352.30 | | Payment Due | $15,148.90 | | | | $33,541.66 | ($2,774.62) | $228.04 | $2.40 |
| 03/15/2012 | $352.30 | | Payment Due | $15,501.20 | | | | $33,541.66 | ($2,774.62) | $228.04 | $2.40 |
| 03/31/2012 | | | Credit to Escrow | $15,501.20 | | $26.13 | | $33,541.66 | ($2,748.49) | $228.04 | $2.40 |
| 04/15/2012 | $352.30 | | Payment Due | $15,853.50 | | | | $33,541.66 | ($2,748.49) | $228.04 | $2.40 |
| 04/25/2012 | | $631.76 | Escrow Advance - Insurance | $15,853.50 | | ($631.76) | | $33,541.66 | ($3,380.25) | $228.04 | $2.40 |
| 05/15/2012 | $352.30 | | Payment Due | $16,205.80 | | | | $33,541.66 | ($3,380.25) | $228.04 | $2.40 |
| 06/15/2012 | $352.30 | | Payment Due | $16,558.10 | | | | $33,541.66 | ($3,380.25) | $228.04 | $2.40 |
| 06/30/2012 | | | Credit to Escrow | $16,558.10 | | $26.13 | | $33,541.66 | ($3,354.12) | $228.04 | $2.40 |
| 07/15/2012 | $352.30 | | Payment Due | $16,910.40 | | | | $33,541.66 | ($3,354.12) | $228.04 | $2.40 |
| 08/15/2012 | $352.30 | | Payment Due | $17,262.70 | | | | $33,541.66 | ($3,354.12) | $228.04 | $2.40 |
| 09/15/2012 | $352.30 | | Payment Due | $17,615.00 | | | | $33,541.66 | ($3,354.12) | $228.04 | $2.40 |
| 09/29/2012 | | | Credit to Escrow | $17,615.00 | | $26.13 | | $33,541.66 | ($3,327.99) | $228.04 | $2.40 |
| 10/15/2012 | $352.30 | | Payment Due | $17,967.30 | | | | $33,541.66 | ($3,327.99) | $228.04 | $2.40 |
| 11/15/2012 | $352.30 | | Payment Due | $18,319.60 | | | | $33,541.66 | ($3,327.99) | $228.04 | $2.40 |
| 12/15/2012 | $352.30 | | Payment Due | $18,671.90 | | | | $33,541.66 | ($3,327.99) | $228.04 | $2.40 |
| 12/31/2012 | | | Credit to Escrow | $18,671.90 | | $26.13 | | $33,541.66 | ($3,301.86) | $228.04 | $2.40 |
| 01/15/2013 | $352.30 | | Payment Due | $19,024.20 | | | | $33,541.66 | ($3,301.86) | $228.04 | $2.40 |
| 02/01/2013 | | $437.21 | Escrow Advance - Taxes | $19,024.20 | | ($437.21) | | $33,541.66 | ($3,739.07) | $228.04 | $2.40 |
| 02/15/2013 | $352.30 | | Payment Due | $19,376.50 | | | | $33,541.66 | ($3,739.07) | $228.04 | $2.40 |
| 03/15/2013 | $352.30 | | Payment Due | $19,728.80 | | | | $33,541.66 | ($3,739.07) | $228.04 | $2.40 |
| 03/30/2013 | | | Credit to Escrow | $19,728.80 | | $34.84 | | $33,541.66 | ($3,704.23) | $228.04 | $2.40 |
| 04/15/2013 | $352.30 | | Payment Due | $20,081.10 | | | | $33,541.66 | ($3,704.23) | $228.04 | $2.40 |
| 04/27/2013 | | $719.31 | Escrow Advance - Insurance | $20,081.10 | | ($719.31) | | $33,541.66 | ($4,423.54) | $228.04 | $2.40 |
| 05/15/2013 | $352.30 | | Payment Due | $20,433.40 | | | | $33,541.66 | ($4,423.54) | $228.04 | $2.40 |
| 06/15/2013 | $352.30 | | Payment Due | $20,785.70 | | | | $33,541.66 | ($4,423.54) | $228.04 | $2.40 |
| 06/29/2013 | | | Credit to Escrow | $20,785.70 | | $26.13 | | $33,541.66 | ($4,397.41) | $228.04 | $2.40 |
| 07/15/2013 | $352.30 | | Payment Due | $21,138.00 | | | | $33,541.66 | ($4,397.41) | $228.04 | $2.40 |
| 08/15/2013 | $352.30 | | Payment Due | $21,490.30 | | | | $33,541.66 | ($4,397.41) | $228.04 | $2.40 |
| 09/15/2013 | $352.30 | | Payment Due | $21,842.60 | | | | $33,541.66 | ($4,397.41) | $228.04 | $2.40 |
| 09/30/2013 | | | Credit to Escrow | $21,842.60 | | $26.13 | | $33,541.66 | ($4,371.28) | $228.04 | $2.40 |

| Date | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Escrow | | | | | | | | | | |
| 10/15/2013 | $352.30 | | Payment Due | $22,194.90 | | | | | $33,541.66 | | ($4,371.28) | $228.04 | $2.40 |
| 11/15/2013 | $352.30 | | Payment Due | $22,547.20 | | | | | $33,541.66 | | ($4,371.28) | $228.04 | $2.40 |
| 12/15/2013 | $352.30 | | Payment Due | $22,899.50 | | | | | $33,541.66 | | ($4,371.28) | $228.04 | $2.40 |
| 12/31/2013 | | | Credit to Escrow | $22,899.50 | | $26.13 | | | $33,541.66 | | ($4,345.15) | $228.04 | $2.40 |
| 01/15/2014 | $352.30 | | Payment Due | $23,251.80 | | | | | $33,541.66 | | ($4,345.15) | $228.04 | $2.40 |
| 01/29/2014 | | $437.21 | Escrow Advance - Taxes | $23,251.80 | | ($437.21) | | | $33,541.66 | | ($4,782.36) | $228.04 | $2.40 |
| 02/15/2014 | $352.30 | | Payment Due | $23,604.10 | | | | | $33,541.66 | | ($4,782.36) | $228.04 | $2.40 |
| 03/15/2014 | $352.30 | | Payment Due | $23,956.40 | | | | | $33,541.66 | | ($4,782.36) | $228.04 | $2.40 |
| 03/31/2014 | | | Credit to Escrow | $23,956.40 | | $26.13 | | | $33,541.66 | | ($4,756.23) | $228.04 | $2.40 |
| 04/15/2014 | $352.30 | | Payment Due | $24,308.70 | | | | | $33,541.66 | | ($4,756.23) | $228.04 | $2.40 |
| 05/02/2014 | | $719.31 | Escrow Advance - Insurance | $24,308.70 | | ($719.31) | | | $33,541.66 | | ($5,475.54) | $228.04 | $2.40 |
| 05/15/2014 | $352.30 | | Payment Due | $24,661.00 | | | | | $33,541.66 | | ($5,475.54) | $228.04 | $2.40 |
| 06/15/2014 | $352.30 | | Payment Due | $25,013.30 | | | | | $33,541.66 | | ($5,475.54) | $228.04 | $2.40 |
| 06/17/2014 | | $26.78 | Escrow Advance - Insurance | $25,013.30 | | ($26.78) | | | $33,541.66 | | ($5,502.32) | $228.04 | $2.40 |
| 06/30/2014 | | | Credit to Escrow | $25,013.30 | | $26.13 | | | $33,541.66 | | ($5,476.19) | $228.04 | $2.40 |
| 07/15/2014 | $352.30 | | Payment Due | $25,365.60 | | | | | $33,541.66 | | ($5,476.19) | $228.04 | $2.40 |
| 08/15/2014 | $352.30 | | Payment Due | $25,717.90 | | | | | $33,541.66 | | ($5,476.19) | $228.04 | $2.40 |
| 09/15/2014 | $352.30 | | Payment Due | $26,070.20 | | | | | $33,541.66 | | ($5,476.19) | $228.04 | $2.40 |
| 09/30/2014 | | | Credit to Escrow | $26,070.20 | | $26.13 | | | $33,541.66 | | ($5,450.06) | $228.04 | $2.40 |
| 10/15/2014 | $352.30 | | Payment Due | $26,422.50 | | | | | $33,541.66 | | ($5,450.06) | $228.04 | $2.40 |
| 11/15/2014 | $352.30 | | Payment Due | $26,774.80 | | | | | $33,541.66 | | ($5,450.06) | $228.04 | $2.40 |
| 12/15/2014 | $352.30 | | Payment Due | $27,127.10 | | | | | $33,541.66 | | ($5,450.06) | $228.04 | $2.40 |
| 12/31/2014 | | | Credit to Escrow | $27,127.10 | | $26.13 | | | $33,541.66 | | ($5,423.93) | $228.04 | $2.40 |
| 01/15/2015 | $352.30 | | Payment Due | $27,479.40 | | | | | $33,541.66 | | ($5,423.93) | $228.04 | $2.40 |
| 02/12/2015 | | $268.54 | Escrow Advance - Taxes | $27,479.40 | | ($268.54) | | | $33,541.66 | | ($5,692.47) | $228.04 | $2.40 |
| 02/15/2015 | $352.30 | | Payment Due | $27,831.70 | | | | | $33,541.66 | | ($5,692.47) | $228.04 | $2.40 |
| 03/15/2015 | $352.30 | | Payment Due | $28,184.00 | | | | | $33,541.66 | | ($5,692.47) | $228.04 | $2.40 |
| 03/31/2015 | | | Credit to Escrow | $28,184.00 | | $34.84 | | | $33,541.66 | | ($5,657.63) | $228.04 | $2.40 |
| 04/15/2015 | $352.30 | | Payment Due | $28,536.30 | | | | | $33,541.66 | | ($5,657.63) | $228.04 | $2.40 |
| 04/27/2015 | | $746.09 | Escrow Advance - Insurance | $28,536.30 | | ($746.09) | | | $33,541.66 | | ($6,403.72) | $228.04 | $2.40 |
| 05/15/2015 | $352.30 | | Payment Due | $28,888.60 | | | | | $33,541.66 | | ($6,403.72) | $228.04 | $2.40 |
| 05/21/2015 | | $100.00 | Legal Costs | $28,888.60 | | | ($100.00) | | $33,541.66 | | ($6,403.72) | $328.04 | $2.40 |
| 05/21/2015 | | $50.00 | Legal Costs | $28,888.60 | | | ($50.00) | | $33,541.66 | | ($6,403.72) | $378.04 | $2.40 |
| 05/21/2015 | | $50.00 | Legal Costs | $28,888.60 | | | ($50.00) | | $33,541.66 | | ($6,403.72) | $428.04 | $2.40 |
| 05/21/2015 | | $50.00 | Legal Costs | $28,888.60 | | | ($50.00) | | $33,541.66 | | ($6,403.72) | $478.04 | $2.40 |
| 05/21/2015 | | $50.00 | Legal Costs | $28,888.60 | | | ($50.00) | | $33,541.66 | | ($6,403.72) | $528.04 | $2.40 |
| 05/21/2015 | | | Credit to Fees/Charges | $28,888.60 | | $43.85 | | | $33,541.66 | | ($6,403.72) | $484.19 | $2.40 |
| 05/27/2015 | | $57.68 | Legal Costs | $28,888.60 | | | ($57.68) | | $33,541.66 | | ($6,403.72) | $541.87 | $2.40 |
| 05/29/2015 | | $2.60 | Legal Costs | $28,888.60 | | | ($2.60) | | $33,541.66 | | ($6,403.72) | $544.47 | $2.40 |
| 05/29/2015 | | $10.39 | Legal Costs | $28,888.60 | | | ($10.39) | | $33,541.66 | | ($6,403.72) | $554.86 | $2.40 |
| 05/29/2015 | | $10.18 | Legal Costs | $28,888.60 | | | ($10.18) | | $33,541.66 | | ($6,403.72) | $565.04 | $2.40 |

| Date | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/30/2015 | | | Credit to Escrow | | 28,888.60 | | | 17.42 | | 33,541.66 | (6,386.30) | 565.04 | 2.40 | |
| 06/01/2015 | | $100.00 | Legal Costs | | 28,888.60 | | | | ($100.00) | 33,541.66 | (6,386.30) | 665.04 | 2.40 | |
| 06/10/2015 | | | Credit to Fees/Charges | | 28,888.60 | | | $3.24 | | 33,541.66 | (6,386.30) | 661.80 | 2.40 | |
| 06/15/2015 | $352.30 | | Payment Due | | 29,240.90 | | | | | 33,541.66 | (6,386.30) | 661.80 | 2.40 | |
| 06/15/2015 | | $3.80 | Legal Costs | | 29,240.90 | | | | ($3.80) | 33,541.66 | (6,386.30) | 665.60 | 2.40 | |
| 07/02/2015 | | $5.27 | Legal Costs | | 29,240.90 | | | | ($5.27) | 33,541.66 | (6,386.30) | 670.87 | 2.40 | |
| 07/02/2015 | | $6.25 | Legal Costs | | 29,240.90 | | | | ($6.25) | 33,541.66 | (6,386.30) | 677.12 | 2.40 | |
| 07/09/2015 | | $57.68 | Legal Costs | | 29,240.90 | | | | ($57.68) | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 07/15/2015 | $352.30 | | Payment Due | | 29,593.20 | | | | | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 08/15/2015 | $352.30 | | Payment Due | | 29,945.50 | | | | | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 09/15/2015 | $352.30 | | Payment Due | | 30,297.80 | | | | | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 10/15/2015 | $352.30 | | Payment Due | | 30,650.10 | | | | | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 11/15/2015 | $352.30 | | Payment Due | | 31,002.40 | | | | | 33,541.66 | (6,386.30) | 734.80 | 2.40 | |
| 11/23/2015 | $353.00 | | Funds Received | | 31,002.40 | | | | $353.00 | 33,541.66 | (6,386.30) | 734.80 | 355.40 | |
| 11/25/2015 | | | Payment Applied | 08/15/2008 | 30,650.10 | $21.00 | $259.95 | $71.35 | ($352.30) | 33,520.66 | (6,314.95) | 734.80 | 3.10 | |
| 12/15/2015 | $352.30 | | Payment Due | | 31,002.40 | | | | | 33,520.66 | (6,314.95) | 734.80 | 3.10 | |
| 12/31/2015 | | | Credit to Escrow | | 31,002.40 | | | $8.38 | | 33,520.66 | (6,306.57) | 734.80 | 3.10 | |
| 01/04/2016 | $353.00 | | Funds Received | | 31,002.40 | | | | $353.00 | 33,520.66 | (6,306.57) | 734.80 | 356.10 | |
| 01/07/2016 | | | Payment Applied | 09/15/2008 | 30,650.10 | $21.16 | $259.79 | $71.35 | ($352.30) | 33,499.50 | (6,235.22) | 734.80 | 3.80 | |
| 01/15/2016 | $352.30 | | Payment Due | | 31,002.40 | | | | | 33,499.50 | (6,235.22) | 734.80 | 3.80 | |
| 01/18/2016 | $353.00 | | Funds Received | | 31,002.40 | | | | $353.00 | 33,499.50 | (6,235.22) | 734.80 | 356.80 | |
| 01/20/2016 | | | Payment Applied | 10/15/2008 | 30,650.10 | $21.33 | $259.62 | $71.35 | ($352.30) | 33,478.17 | (6,163.87) | 734.80 | 4.50 | |
| 02/04/2016 | | $352.87 | Escrow Advance - Taxes | | 30,650.10 | | | ($352.87) | | 33,478.17 | (6,516.74) | 734.80 | 4.50 | |
| 02/15/2016 | $352.30 | | Payment Due | | 31,002.40 | | | | | 33,478.17 | (6,516.74) | 734.80 | 4.50 | |
| 02/16/2016 | $353.00 | | Funds Received | | 31,002.40 | | | | $353.00 | 33,478.17 | (6,516.74) | 734.80 | 357.50 | |
| 02/17/2016 | | | Payment Applied | 11/15/2008 | 30,650.10 | $21.49 | $259.46 | $71.35 | ($352.30) | 33,456.68 | (6,445.39) | 734.80 | 5.20 | |
| 03/15/2016 | $362.74 | | Payment Due | | 31,012.84 | | | | | 33,456.68 | (6,445.39) | 734.80 | 5.20 | |
| 03/29/2016 | $353.00 | | Payment Applied | 12/15/2008 | 30,660.54 | $21.66 | $259.29 | $71.35 | $0.70 | 33,435.02 | (6,374.04) | 734.80 | 5.90 | |
| 04/15/2016 | $362.74 | | Payment Due | | 31,023.28 | | | | | 33,435.02 | (6,374.04) | 734.80 | 5.90 | |
| 05/09/2016 | $353.00 | | Payment Applied | 01/15/2009 | 30,670.98 | $21.83 | $259.12 | $71.35 | $0.70 | 33,413.19 | (6,302.69) | 734.80 | 6.60 | |
| 05/15/2016 | $362.74 | | Payment Due | | 31,033.72 | | | | | 33,413.19 | (6,302.69) | 734.80 | 6.60 | |
| 05/18/2016 | | $771.09 | Escrow Advance - Insurance | | 31,033.72 | | | ($771.09) | | 33,413.19 | (7,073.78) | 734.80 | 6.60 | |
| 06/02/2016 | | $176.00 | Legal Costs | | 31,033.72 | | | | ($176.00) | 33,413.19 | (7,073.78) | 910.80 | 6.60 | |
| 06/09/2016 | $2,560.40 | | Funds Received | | 31,033.72 | | | | $2,560.40 | 33,413.19 | (7,073.78) | 910.80 | 2,567.00 | |
| 06/09/2016 | $353.00 | | Payment Applied | 02/15/2009 | 30,681.42 | $22.00 | $258.95 | $71.35 | $0.70 | 33,391.19 | (7,002.43) | 910.80 | 2,567.70 | |
| 06/10/2016 | | | Payment Applied | 03/15/2009 | 30,329.12 | $22.17 | $258.78 | $71.35 | ($352.30) | 33,369.02 | (6,931.08) | 910.80 | 2,215.40 | |
| 06/10/2016 | | | Payment Applied | 04/15/2009 | 29,976.82 | $22.34 | $258.61 | $71.35 | ($352.30) | 33,346.68 | (6,859.73) | 910.80 | 1,863.10 | |
| 06/10/2016 | | | Payment | 05/15/2009 | 29,624.52 | $22.51 | $258.44 | $71.35 | ($352.30) | 33,324.17 | (6,788.38) | 910.80 | 1,510.80 | |

| Date | | | Transaction | Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Applied | | | | | | | | | | |
| 06/10/2016 | | | Payment Applied | 06/15/2009 | $29,272.22 | $22.69 | $258.26 | $71.35 | ($352.30) | $33,301.48 | ($6,717.03) | $910.80 | $1,158.50 |
| 06/10/2016 | | | Payment Applied | 07/15/2009 | $28,919.92 | $22.86 | $258.09 | $71.35 | ($352.30) | $33,278.62 | ($6,645.68) | $910.80 | $806.20 |
| 06/10/2016 | | | Payment Applied | 08/15/2009 | $28,567.62 | $23.04 | $257.91 | $71.35 | ($352.30) | $33,255.58 | ($6,574.33) | $910.80 | $453.90 |
| 06/10/2016 | | | Payment Applied | 09/15/2009 | $28,215.32 | $23.22 | $257.73 | $71.35 | ($352.30) | $33,232.36 | ($6,502.98) | $910.80 | $101.60 |
| 06/15/2016 | $362.74 | | Payment Due | | $28,578.06 | | | | | $33,232.36 | ($6,502.98) | $910.80 | $101.60 |
| 06/17/2016 | | $685.79 | Funds Received | | $28,578.06 | | | | $685.79 | $33,232.36 | ($6,502.98) | $910.80 | $787.39 |
| 06/20/2016 | | | Payment Applied | 10/15/2009 | $28,225.76 | $23.40 | $257.55 | $71.35 | ($352.30) | $33,208.96 | ($6,431.63) | $910.80 | $435.09 |
| 06/20/2016 | | | Payment Applied | 11/15/2009 | $27,873.46 | $23.58 | $257.37 | $71.35 | ($352.30) | $33,185.38 | ($6,360.28) | $910.80 | $82.79 |
| 06/24/2016 | | $662.00 | Payment Applied | 12/15/2009 | $27,521.16 | $23.76 | $257.19 | $71.35 | $309.70 | $33,161.62 | ($6,288.93) | $910.80 | $392.49 |
| 07/13/2016 | | | Payment Applied | 01/15/2010 | $27,168.86 | $23.95 | $257.00 | $71.35 | ($352.30) | $33,137.67 | ($6,217.58) | $910.80 | $40.19 |
| 07/15/2016 | $362.74 | | Payment Due | | $27,531.60 | | | | | $33,137.67 | ($6,217.58) | $910.80 | $40.19 |
| 07/29/2016 | | $685.79 | Funds Received | | $27,531.60 | | | | $685.79 | $33,137.67 | ($6,217.58) | $910.80 | $725.98 |
| 08/01/2016 | | $662.00 | Payment Applied | 02/15/2010 | $27,179.30 | $24.13 | $256.82 | $71.35 | $309.70 | $33,113.54 | ($6,146.23) | $910.80 | $1,035.68 |
| 08/01/2016 | | | Payment Applied | 03/15/2010 | $26,827.00 | $24.32 | $256.63 | $71.35 | ($352.30) | $33,089.22 | ($6,074.88) | $910.80 | $683.38 |
| 08/02/2016 | | | Payment Applied | 04/15/2010 | $26,474.70 | $24.51 | $256.44 | $71.35 | ($352.30) | $33,064.71 | ($6,003.53) | $910.80 | $331.08 |
| 08/15/2016 | $362.74 | | Payment Due | | $26,837.44 | | | | | $33,064.71 | ($6,003.53) | $910.80 | $331.08 |
| 08/31/2016 | | $662.00 | Payment Applied | 05/15/2010 | $26,485.14 | $24.70 | $256.25 | $71.35 | $309.70 | $33,040.01 | ($5,932.18) | $910.80 | $640.78 |
| 08/31/2016 | | | Payment Applied | 06/15/2010 | $26,132.84 | $24.89 | $256.06 | $71.35 | ($352.30) | $33,015.12 | ($5,860.83) | $910.80 | $288.48 |
| 09/15/2016 | $362.74 | | Payment Due | | $26,495.58 | | | | | $33,015.12 | ($5,860.83) | $910.80 | $288.48 |
| 09/23/2016 | | $685.79 | Funds Received | | $26,495.58 | | | | $685.79 | $33,015.12 | ($5,860.83) | $910.80 | $974.27 |
| 10/11/2016 | | | Payment Applied | 07/15/2010 | $26,143.28 | $25.08 | $255.87 | $71.35 | $310.70 | $32,990.04 | ($5,789.48) | $910.80 | $1,284.97 |
| 10/11/2016 | | | Payment Applied | 08/15/2010 | $25,790.98 | $25.28 | $255.67 | $71.35 | ($352.30) | $32,964.76 | ($5,718.13) | $910.80 | $932.67 |
| 10/15/2016 | $362.74 | | Payment Due | | $26,153.72 | | | | | $32,964.76 | ($5,718.13) | $910.80 | $932.67 |
| 10/24/2016 | | | Payment Applied | 09/15/2010 | $25,801.42 | $25.47 | $255.48 | $71.35 | ($352.30) | $32,939.29 | ($5,646.78) | $910.80 | $580.37 |
| 10/25/2016 | | | Payment Applied | 10/15/2010 | $25,449.12 | $25.67 | $255.28 | $71.35 | ($352.30) | $32,913.62 | ($5,575.43) | $910.80 | $228.07 |
| 10/31/2016 | | $663.00 | Funds Received | | $25,449.12 | | | | $663.00 | $32,913.62 | ($5,575.43) | $910.80 | $891.07 |
| 11/01/2016 | | | Payment Applied | 11/15/2010 | $25,096.82 | $25.87 | $255.08 | $71.35 | ($352.30) | $32,887.75 | ($5,504.08) | $910.80 | $538.77 |
| 11/01/2016 | | | Payment Applied | 12/15/2010 | $24,744.52 | $26.07 | $254.88 | $71.35 | ($352.30) | $32,861.68 | ($5,432.73) | $910.80 | $186.47 |
| 11/04/2016 | | $685.79 | Funds Received | | $24,744.52 | | | | $685.79 | $32,861.68 | ($5,432.73) | $910.80 | $872.26 |
| 11/08/2016 | | | Payment Applied | 01/15/2011 | $24,392.02 | $26.27 | $254.68 | $71.35 | ($352.30) | $32,835.41 | ($5,361.38) | $910.80 | $519.96 |
| 11/08/2016 | | | Payment Applied | 02/15/2011 | $24,039.92 | $26.48 | $254.47 | $71.35 | ($352.30) | $32,808.93 | ($5,290.03) | $910.80 | $167.66 |
| 11/15/2016 | $362.74 | | Payment Due | | $24,402.66 | | | | | $32,808.93 | ($5,290.03) | $910.80 | $167.66 |
| 12/15/2016 | $362.74 | | Payment Due | | $24,765.40 | | | | | $32,808.93 | ($5,290.03) | $910.80 | $167.66 |

| Date | | | | Description | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/15/2016 | | $663.00 | | Funds Received | | $24,765.40 | | | | $663.00 | $32,808.93 | ($5,290.03) | $910.80 | $830.66 |
| 12/20/2016 | | | | Payment Applied | 03/15/2011 | $24,413.10 | $26.68 | $254.27 | $71.35 | ($352.30) | $32,782.25 | ($5,218.68) | $910.80 | $478.36 |
| 12/23/2016 | | $685.79 | | Funds Received | | $24,413.10 | | | | $685.79 | $32,782.25 | ($5,218.68) | $910.80 | $1,164.15 |
| 12/27/2016 | | | | Payment Applied | 04/15/2011 | $24,060.80 | $26.89 | $254.06 | $71.35 | ($352.30) | $32,755.36 | ($5,147.33) | $910.80 | $811.85 |
| 12/27/2016 | | | | Payment Applied | 05/15/2011 | $23,708.50 | $27.10 | $253.85 | $71.35 | ($352.30) | $32,728.26 | ($5,075.98) | $910.80 | $459.55 |
| 01/10/2017 | | $663.00 | | Funds Received | | $23,708.50 | | | | $663.00 | $32,728.26 | ($5,075.98) | $910.80 | $1,122.55 |
| 01/12/2017 | | | | Payment Applied | 06/15/2011 | $23,356.20 | $27.31 | $253.64 | $71.35 | ($352.30) | $32,700.95 | ($5,004.63) | $910.80 | $770.25 |
| 01/12/2017 | | | | Payment Applied | 07/15/2011 | $23,003.90 | $27.52 | $253.43 | $71.35 | ($352.30) | $32,673.43 | ($4,933.28) | $910.80 | $417.95 |
| 01/15/2017 | $362.74 | | | Payment Due | | $23,366.64 | | | | | $32,673.43 | ($4,933.28) | $910.80 | $417.95 |
| 02/13/2017 | | | $352.87 | Escrow Advance - Taxes | | $23,366.64 | | | | ($352.87) | $32,673.43 | ($5,286.15) | $910.80 | $417.95 |
| 02/15/2017 | $362.74 | | | Payment Due | | $23,729.38 | | | | | $32,673.43 | ($5,286.15) | $910.80 | $417.95 |
| 02/20/2017 | | $663.00 | | Funds Received | | $23,729.38 | | | | $663.00 | $32,673.43 | ($5,286.15) | $910.80 | $1,080.95 |
| 02/22/2017 | | | | Payment Applied | 08/15/2011 | $23,377.08 | $27.73 | $253.22 | $71.35 | ($352.30) | $32,645.70 | ($5,214.80) | $910.80 | $728.65 |
| 02/22/2017 | | | | Payment Applied | 09/15/2011 | $23,024.78 | $27.95 | $253.00 | $71.35 | ($352.30) | $32,617.75 | ($5,143.45) | $910.80 | $376.35 |
| 03/09/2017 | | $685.79 | | Funds Received | | $23,024.78 | | | | $685.79 | $32,617.75 | ($5,143.45) | $910.80 | $1,062.14 |
| 03/10/2017 | | | | Payment Applied | 10/15/2011 | $22,672.48 | $28.16 | $252.79 | $71.35 | ($352.30) | $32,589.59 | ($5,072.10) | $910.80 | $709.84 |
| 03/10/2017 | | | | Payment Applied | 11/15/2011 | $22,320.18 | $28.38 | $252.57 | $71.35 | ($352.30) | $32,561.21 | ($5,000.75) | $910.80 | $357.54 |
| 03/13/2017 | | $663.00 | | Funds Received | | $22,320.18 | | | | $663.00 | $32,561.21 | ($5,000.75) | $910.80 | $1,020.54 |
| 03/15/2017 | $384.39 | | | Payment Due | | $22,704.57 | | | | | $32,561.21 | ($5,000.75) | $910.80 | $1,020.54 |
| 03/15/2017 | | | | Payment Applied | 12/15/2011 | $22,352.27 | $28.60 | $252.35 | $71.35 | ($352.30) | $32,532.61 | ($4,929.40) | $910.80 | $668.24 |
| 03/15/2017 | | | | Payment Applied | 01/15/2012 | $21,999.97 | $28.82 | $252.13 | $71.35 | ($352.30) | $32,503.79 | ($4,858.05) | $910.80 | $315.94 |
| 04/10/2017 | | $353.00 | | Funds Received | | $21,999.97 | | | | $353.00 | $32,503.79 | ($4,858.05) | $910.80 | $668.94 |
| 04/12/2017 | | | | Payment Applied | 02/15/2012 | $21,647.62 | $29.05 | $251.90 | $71.35 | ($352.30) | $32,474.74 | ($4,786.70) | $910.80 | $316.64 |
| 04/15/2017 | $384.39 | | | Payment Due | | $22,032.06 | | | | | $32,474.74 | ($4,786.70) | $910.80 | $316.64 |
| 04/19/2017 | | $685.79 | | Funds Received | | $22,032.06 | | | | $685.79 | $32,474.74 | ($4,786.70) | $910.80 | $1,002.43 |
| 04/20/2017 | | | | Payment Applied | 03/15/2012 | $21,679.76 | $29.27 | $251.68 | $71.35 | ($352.30) | $32,445.47 | ($4,715.35) | $910.80 | $650.13 |
| 04/20/2017 | | | | Payment Applied | 04/15/2012 | $21,327.46 | $29.50 | $251.45 | $71.35 | ($352.30) | $32,415.97 | ($4,644.00) | $910.80 | $297.83 |
| 05/05/2017 | | | $771.09 | Escrow Advance - Insurance | | $21,327.46 | | | | ($771.09) | $32,415.97 | ($5,415.09) | $910.80 | $297.83 |
| 05/08/2017 | | $363.00 | | Funds Received | | $21,327.46 | | | | $363.00 | $32,415.97 | ($5,415.09) | $910.80 | $660.83 |
| 05/11/2017 | | | | Payment Applied | 05/15/2012 | $20,975.16 | $29.73 | $251.22 | $71.35 | ($352.30) | $32,386.24 | ($5,343.74) | $910.80 | $308.53 |
| 05/15/2017 | $384.39 | | | Payment Due | | $21,359.55 | | | | | $32,386.24 | ($5,343.74) | $910.80 | $308.53 |
| 05/30/2017 | | | $1,500.00 | Legal Costs | | $21,359.55 | | | | ($1,500.00) | $32,386.24 | ($5,343.74) | $2,410.80 | $308.53 |

| Date | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/07/2017 | | | $85.00 | Legal Costs | $21,359.55 | | | ($85.00) | | $32,386.24 | ($5,343.74) | $2,495.80 | $308.53 |
| 06/07/2017 | | | $40.00 | Legal Costs | $21,359.55 | | | ($40.00) | | $32,386.24 | ($5,343.74) | $2,535.80 | $308.53 |
| 06/07/2017 | | | $40.00 | Legal Costs | $21,359.55 | | | ($40.00) | | $32,386.24 | ($5,343.74) | $2,575.80 | $308.53 |
| 06/07/2017 | | | $40.00 | Legal Costs | $21,359.55 | | | ($40.00) | | $32,386.24 | ($5,343.74) | $2,615.80 | $308.53 |
| 06/07/2017 | | | $40.00 | Legal Costs | $21,359.55 | | | ($40.00) | | $32,386.24 | ($5,343.74) | $2,655.80 | $308.53 |
| 06/09/2017 | | | $2.70 | Legal Costs | $21,359.55 | | | ($2.70) | | $32,386.24 | ($5,343.74) | $2,658.50 | $308.53 |
| 06/15/2017 | $384.39 | | | Payment Due | $21,743.94 | | | | | $32,386.24 | ($5,343.74) | $2,658.50 | $308.53 |
| 06/21/2017 | | | $85.00 | Legal Costs | $21,743.94 | | | ($85.00) | | $32,386.24 | ($5,343.74) | $2,743.50 | $308.53 |
| 07/05/2017 | | | $2.82 | Legal Costs | $21,743.94 | | | ($2.82) | | $32,386.24 | ($5,343.74) | $2,746.32 | $308.53 |
| 07/15/2017 | $384.39 | | | Payment Due | $22,128.33 | | | | | $32,386.24 | ($5,343.74) | $2,746.32 | $308.53 |
| 08/04/2017 | | | $85.00 | Legal Costs | $22,128.33 | | | ($85.00) | | $32,386.24 | ($5,343.74) | $2,831.32 | $308.53 |
| 08/08/2017 | | | $3.80 | Legal Costs | $22,128.33 | | | ($3.80) | | $32,386.24 | ($5,343.74) | $2,835.12 | $308.53 |
| 08/15/2017 | $384.39 | | | Payment Due | $22,512.72 | | | | | $32,386.24 | ($5,343.74) | $2,835.12 | $308.53 |
| 09/07/2017 | | | $57.68 | Legal Costs | $22,512.72 | | | ($57.68) | | $32,386.24 | ($5,343.74) | $2,892.80 | $308.53 |
| **Total** | | | | | **$22,512.72** | | | | | **$32,386.24** | **($5,343.74)** | **$2,892.80** | **$308.53** |

Case 17-16087-mdc    Doc 25-2    Filed 01/26/18    Entered 01/26/18 18:38:26    Desc
Case 17-16087-mdc    Claim 7-1    Filed 01/23/18    Desc Main Document    Page 12 of 12
Exhibit A    Proof of Claim    Page 12 of 43

Phelan Hallinan Diamond & Jones, LLP
1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
Philadelphia, PA 19103

UNITED STATES BANKRUPTCY COURT

Chapter 13
Case No 17-16087-mdc

In Re:

MELONY L. BROWN F/K/A MELONY GAMBLE **(Debtor)**

Thomas Song, Esq., Id. No.89834 Certifies that a true and correct copy of the attached Proof of Claim was served electronically upon the following person(s):

BRANDON J. PERLOFF
1429 WALNUT STREET, SUITE 701
PHILADELPHIA, PA 19102
**(Attorney for Debtor)**

WILLIAM C. MILLER, ESQ.
P.O. BOX 1229
PHILADELPHIA, PA 19105
**(Chapter 13 Trustee)**

UNITED STATES TRUSTEE
OFFICE OF THE U.S. TRUSTEE
833 CHESTNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
**(US Trustee)**

Date    January 23, 2018                         /s/ Thomas Song, Esquire
                                                 Thomas Song, Esq., Id. No.89834
                                                 Phelan Hallinan Diamond & Jones, LLP
                                                 1617 JFK Boulevard, Suite 1400
                                                 One Penn Center Plaza
                                                 Philadelphia, PA 19103
                                                 Phone Number: 215-563-7000 Ext 31387
                                                 Fax Number: 215-568-7616
                                                 Email: Thomas.Song@phelanhallinan.com

# Seterus™

PO Box 1077
Hartford, CT 06143-1077

**Business Hours (Pacific Time)**
Monday–Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

AUDREY G BROWN
c/o BRANDON J. PERLOFF
1429 WALNUT ST STE 701
PHILADELPHIA PA 19102-3207

| ESCROW ACCOUNT STATEMENT | |
|---|---|
| Analysis Date: | 09/28/17 |
| Loan Number: | |

| Current Payment | | New Payment Effective 09/15/17 | |
|---|---|---|---|
| Principal and Interest | $280.95 | Principal and Interest* | $280.95 |
| Escrow | $71.35 | Escrow | $89.50 |
| Total Current Payment | $352.30 | **Total NEW Payment*** | $370.45 |

\* The principal and interest payments reflect the contractual amount due under the note, which can be modified with a mutually agreed upon payment plan. In addition, the new principal and interest payment and the total new payment may not reflect any changes due to interest rate adjustments. You will receive a separate notice for interest rate adjustments.

### NEW MORTGAGE PAYMENT NOTICE AND ESCROW ACCOUNT DISCLOSURE STATEMENT

Seterus, Inc. is the servicer of the above referenced loan. In accordance with federal guidelines, your escrow account is reviewed at least once a year to determine if sufficient funds are available to pay your taxes and/or insurance. Your escrow payment will be a minimum of the total anticipated disbursements divided by the number of scheduled installments due in the next 12 months. This payment will increase if you have a post-petition shortage and/or deficiency. This statement provides a history of actual escrow account activity and a projection of the escrow account activity for the next 12 months.

Our records indicate a petition for Bankruptcy was filed on September 7, 2017. Pursuant to that petition, we have filed a proof of claim with the Bankruptcy court. Any shortage and/or deficiency listed under the Proof of Claim section will be excluded from your future scheduled escrow payment as these amounts will be added to your pre-petition arrearage and collected in your bankruptcy plan payment.

| ANTICIPATED DISBURSEMENTS September 2017 to August 2018 | |
|---|---|
| CITY | $352.87 |
| HAZARD INS | $721.09 |
| **Total Disbursements** | **$1,073.96** |

| Bankruptcy File Date | September 7, 2017 |
|---|---|

| Pre-Petition Escrow Shortage/Deficiency as of Analysis Date | $978.33 |
|---|---|

\*Post Petition Beg Bal = The post-petition portion of the escrow starting balance

\*\*Beginning balance = Starting balance less any unpaid escrow disbursements

The Real Estate Settlement Procedures Act (RESPA) allows us to collect and maintain up to 1/6 of your total disbursements in your escrow account at all times, unless prohibited by state law. This cushion covers any potential increases in your tax and/or insurance disbursements. Cushion selected by servicer: $179.00.

### ESCROW ACCOUNT PROJECTIONS FOR THE NEXT 12 MONTH ESCROW CYCLE
Anticipated Activity

| | Payments to Escrow | Payments from Escrow | Description | Projected Balance |
|---|---|---|---|---|
| Beginning Balance** | | | | $530.87- |
| Post Petition Beg Bal* | | | | $447.46 |
| **Date** | | | | |
| 09/01/2017 | 89.50 | 0.00 | | 536.96 |
| 10/01/2017 | 89.50 | 0.00 | | 626.46 |
| 11/01/2017 | 89.50 | 0.00 | | 715.96 |
| 12/01/2017 | 89.50 | 0.00 | | 805.46 |
| 01/01/2018 | 89.50 | 0.00 | | 894.96 |
| 02/01/2018 | 89.50 | 352.87- | CITY | 631.59 |
| 03/01/2018 | 89.50 | 0.00 | | 721.09 |
| 04/01/2018 | 89.50 | 0.00 | | 810.59 |
| 05/01/2018 | 89.50 | 721.09- | HAZARD INS | 179.00 |
| 06/01/2018 | 89.50 | 0.00 | | 268.50 |
| 07/01/2018 | 89.50 | 0.00 | | 358.00 |
| 08/01/2018 | 89.50 | 0.00 | | 447.50 |
| **Total** | **$1,074.00** | **$1,073.96-** | | |

Under federal law, your lowest monthly balance in the escrow account should not have exceeded $179.00, or 1/6 of the total anticipated payments from your escrow account. Your lowest escrow balance was $179.00.

The escrow account has a pre-petition shortage and/or deficiency. A deficiency, if applicable, is the amount of negative balance in the escrow account, which can occur when funds that have been paid from the escrow account exceed the funds paid to the escrow account. An escrow shortage occurs when the escrow balance is not enough to pay the estimated items and any additional reserve deposits that need to be paid during the next 12 months. The pre-petition shortage and/or deficiency is accounted for on the proof of claim (POC) and will be collected as part of your pre-petition plan payment.

Representation of Printed Document

# ESCROW ACCOUNT HISTORY

This is a statement of actual activity in your escrow account from March 2017 to August 2017. This history compares the projections from your last escrow analysis or initial disclosure and the actual activity in your account. If a prior escrow analysis was not conducted during this historical period, the projected escrow balance will be zero.

| ACTUAL ESCROW ACCOUNT HISTORY | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Payments to Escrow | | Payments from Escrow | | Description | Escrow Balance | |
| | Projected | Actual | Projected | Actual | | Projected | Actual |
| Beginning Balance | | | | | | $677.42 | $5,143.45- |
| **Date** | | | | | | | |
| 03/01/17 | 93.67 | 285.40 * | 0.00 | 0.00 | | 771.09 | 4,858.05- |
| 04/01/17 | 93.67 | 214.05 * | 0.00 | 0.00 | | 864.76 | 4,644.00- |
| 05/01/17 | 93.67 | 71.35 * | 771.09- | 771.09- | HAZARD INS | 187.34 | 5,343.74- |
| 06/01/17 | 93.67 | 0.00 * | 0.00 | 0.00 | | 281.01 | 5,343.74- |
| 07/01/17 | 93.67 | 0.00 * | 0.00 | 0.00 | | 374.68 | 5,343.74- |
| 08/01/17 | 93.67 | 0.00 * | 0.00 | 0.00 | | 468.35 | 5,343.74- |
| **Total** | **$562.02** | **$570.80** | **$771.09-** | **$771.09-** | | | |

* indicates a difference from a previous estimate either in the date or the amount.
** indicates escrow payment made during a period where the loan was paid ahead.

**NOTE –** This analysis was prepared in advance of the escrow payment change date. Therefore, the projected beginning balance for the next 12 months estimates that you have paid all the required scheduled installments as shown in your actual account history and that all scheduled disbursements have been made from your escrow account.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT. THIS NOTICE IS BEING FURNISHED FOR YOUR INFORMATION AND TO COMPLY WITH APPLICABLE LAWS AND REGULATIONS. IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT. **COLORADO:** SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR 97005.

INTERNET REPRINT

# NOTE

| July 7, 2006 | Pittsburgh | , | Pennsylvania |
|---|---|---|---|
| [Date] | [City] | | [State] |

**4238 NORTH FRANKLIN STREET, PHILADELPHIA, PENNSYLVANIA 19140**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   34,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
CHASE BANK USA, N.A.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   9.300   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   15th   day of each month beginning on   August 15   ,
2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   July 15, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 78828 Phoenix, AZ 85062-8828
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   280.95   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments      SEE ATTACHED RIDER

If the Note Holder has not received the full amount of any monthly payment by the end of XXXXX   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be XXXXX   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE    - Single Family -    FNMA/FHLMC UNIFORM INSTRUMENT
Page 1 of 2

_/\\_ -5A  (9410)                         VMP MORTGAGE FORMS - (800)521-7291
                                          BROWN

Form 3200 12/83
Amended 5/91
Initials: _____

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
AUDREY G BROWN                                    -Borrower
SSN: ████████████

_____ (Seal)
                                                  -Borrower
SSN: -   -

_____ (Seal)
                                                  -Borrower
SSN: -   -

_____ (Seal)
                                                  -Borrower
SSN: -   -

*(Sign Original Only)*

# RIDER TO NOTE

**Note Date:**   July 7, 2006

     For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

**(Check Box If Applicable)**

[ X ]   **LATE CHARGE FOR OVERDUE PAYMENTS**

     If the Note Holder has not received the full amount of any monthly payment within   10   days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be   the Greater of 6.0   % of my overdue payment of principal and interest or $   or $29.00   . I will pay this late charge promptly but only once on each late payment.

[ N/A ]   **PREPAYMENT PENALTY**

     You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. The loan that you are closing has a prepayment penalty in place for the first _____ years of this Note. [For all options] If you prepay in full or in part during the first _____ years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

[ N/A ]   **BALLOON PAYMENT**

     THIS LOAN IS PAYABLE IN FULL AT THE END OF                              ( 30 ) YEARS. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE UNPAID INTEREST THEN DUE. **THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.** BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER OR LOWER THAN THE INTEREST RATE ON THIS LOAN. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF BORROWER OBTAINS FINANCING FROM THE SAME LENDER.

[ N/A ]   **NOTICE OF MATURITY**

     At least ninety (90) but not more that one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the large balloon payment which will be due on the Maturity Date (assuming all scheduled regular monthly payments due between the date of the notice and the Maturity Date are made on time).

_Audrey H Brown_____          _____

AUDREY G BROWN

_____          _____

*AC6D518- 01/2006*       :272:     BROWN

# RIDER TO NOTE

**Note Date:**   July 7, 2006

For a valuable consideration, receipt of which is hereby acknowledged, both Borrower and Lender agree that this RIDER TO NOTE ("Rider") amends that certain Promissory Note ("NOTE") of date shown above, to which this Rider is attached. Borrower and Lender agree that this Note shall be subject to the following provisions, notwithstanding any provisions to the contrary contained in said Note or the Security Instrument given by Borrower to secure repayment of the Note.

**(Check Box if Applicable)**

| x |  |
|---|---|

### LATE CHARGE FOR OVERDUE PAYMENTS

If the Note Holder has not received the full amount of any monthly payment within   10 days of the payment due date shown on the monthly payment notice, I will pay a late charge to the Note Holder. The amount of the charge will be  the Greater of 6.0 % of my overdue payment of principal and interest or $  or $29.00          . I will pay this late charge promptly but only once on each late payment.

| N/A |  |
|---|---|

### PREPAYMENT PENALTY

You have a right to make payments of principal at any time before they are due. However, you must tell us in writing whenever you make a prepayment. Partial prepayments will not change the due dates of monthly payments and may not immediately affect the monthly payment amount. The loan that you are closing has a prepayment penalty in place for the first _____ years of this Note.  [For all options] If you prepay in full or in part during the first _____ years of the loan, you will be charged a prepayment penalty premium equal to six months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof. [For 5-yr option, only] If you prepay in full or in part during the fourth or fifth year, you will be charged a prepayment penalty premium equal to three months' advance interest on the amount prepaid in excess of twenty percent of the original principal balance within any twelve month period measured from the Note date or anniversary thereof.

| N/A |  |
|---|---|

### BALLOON PAYMENT

THIS LOAN IS PAYABLE IN FULL AT THE END OF                                  (  30  ) YEARS. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND THE UNPAID INTEREST THEN DUE. **THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.** BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER OR LOWER THAN THE INTERESTRATE ON THIS LOAN. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF BORROWER OBTAINS FINANCING FROM THE SAME LENDER.

| N/A |  |
|---|---|

### NOTICE OF MATURITY

At least ninety (90) but not more that one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the large balloon payment which will be due on the Maturity Date (assuming all scheduled regular monthly payments due between the date of the notice and the Maturity Date are made on time).

_____
AUDREY G BROWN

_____        _____

_____        _____

AC6D518- 01/2006        :272:    BROWN

Allonge

| Borrower(s): | BROWN    AUDREY | Loan Amount: | $34,000.00 |
|---|---|---|---|

4238 NORTH FRANKLIN STREET

PHILADELPHI, PA 19140

Loan #: ▇▇▇▇

Note Date:   7/7/2006

PAY TO THE ORDER OF:

Chase Home Finance, LLC

without recourse this 12/1/2006

Chase Bank USA, N.A.

a Delaware Corporation

_A Young_ _(signature)_

---

A Young

Assistant Secretary

Case 2:16-cv-06087-mdc   Claim 7-2 Part 2   Filed 01/26/18   Entered 01/26/18 18:28:26   Page 8
Case 2:16-cv-06087-mdc   Doc 25-2   Filed 01/26/18   Best Loan Documents   Page 8
Exhibit A   Proof of Claim   Page 20 of 43
Allonge   of Claim

| | | | Loan Amount: | $34,000.00 |
|---|---|---|---|---|
| Borrower(s): | BROWN | AUDREY | Loan #: | |
| | 4238 NORTH FRANKLIN STREET | | Note Date: | 7/7/2006 |
| | PHILADELPHI, PA 19140 | | | |

**PAY TO THE ORDER OF:**

**without recourse this 12/1/2006**

Chase Home Finance, LLC
a Delaware Corporation

*a young*
_____

A Young
Assistant Secretary

Prepared By:
**Rosemary Brown**

504 Virginia Dr.
Fort Washington PA 19034

Return To:
Express Financial Services
National Service Center
P.O. Box 25467
Pittsburgh, PA 15220

Parcel Number:

**51506313**
Page: 1 of 17
08/10/2006 02:36PM

This Document Recorded          Doc Id: 51506313
08/10/2006                      Receipt #: 524230
02:36PM                         Rec Fee: 126.50
Doc Code: M   Commissioner of Records, City of Philadelphia

Premises:     **4238 NORTH FRANKLIN STREET**
              **PHILADELPHIA, Pennsylvania 19140**

———————————————— |Space Above This Line For Recording Data| ————————————————

# MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 7, 2006**
together with all Riders to this document.
**(B) "Borrower"** is
**AUDREY G BROWN, WIDOW**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is  **CHASE BANK USA, N.A.**

Lender is a  **nationally chartered bank**

**PENNSYLVANIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3039  1/01

-6(PA) (0502)
®

Page 1 of 16          Initials: _AB_

VMP Mortgage Solutions, Inc. (800)521-7291



**:272:     BROWN**

organized and existing under the laws of **UNITED STATES OF AMERICA**
Lender's address is **200 White Clay Center Drive, Newark, DE 19711**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **July 7, 2006**
The Note states that Borrower owes Lender
**THIRTY FOUR THOUSAND & 00/100**                                                                Dollars
(U.S. $     **34,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **July 15, 2036**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _A.B._

:272:     **BROWN**

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the        **County**        [Type of Recording Jurisdiction] of        **Philadelphia**        [Name of Recording Jurisdiction]:

**All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.**

which currently has the address of
**4238 NORTH FRANKLIN STREET**                                                      [Street]
**PHILADELPHIA**                        [City], Pennsylvania        **19140**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

-6(PA) (0502)                        Page 3 of 16        Initials: _A.B._        Form 3039 1/01

:272:    **BROWN**

Order Number: ▓▓▓▓▓▓▓▓ (REVISED)
  Re: AUDREY BROWN

4238 NORTH FRANKLIN STREET
PHILADELPHIA, PA  19140
Philadelphia County

## EXHIBIT 'A'

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE ON THE WEST SIDE OF NORTH
FRANKLIN STREET AT THE DISTANCE OF TWO HUNDRED AND NINETY FEET SIX
INCHES NORTHWARDLY FROM THE NORTH SIDE OF HUNTING PARK AVENUE ONE
HUNDRED FEET WIDE IN THE FORTY THIRD WARD OF THE CITY OF PHILADELPHIA.
CONTAINING IN FRONT OR BREADTH ON THE SAID NORTH FRANKLIN STREET
FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR
DEPTH WESTWARDLY BETWEEN LINES PARALLEL WITH HUNTING PARK AVENUE SIXTY
FEET SIX INCHES TO A CERTAIN THREE FEET WIDE ALLEY LEADING SOUTHWARDLY
INTO THE SAID HUNTING PARK AVENUE,
TOGETHER WITH! THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF
THE ABOVE MENTIONED THREE FEET WIDE ALLEY AS AND FOR A PASSAGEWAY AND
WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.

 

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

Initials: _A.B._

-6(PA) (0502)                    Page 4 of 16                    Form 3039  1/01

:272:    BROWN

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the

:272:    **BROWN**

Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

VMP®-6(PA) (0502)          Page 6 of 16          Initials: _A.B._          Form 3039 1/01

:272:    BROWN

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Initials: _A.B_

VMP-6(PA) (0502)                Page 7 of 16                     Form 3039  1/01

:272:    BROWN

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _AB_

-6(PA) (0502)         Page 8 of 16         Form 3039 1/01

:272: BROWN

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

:272:     BROWN

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

Initials: _A.B._

:272: **BROWN**

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Initials: _AB_

VMP®-6(PA) (0502)   Page 11 of 16   Form 3039 1/01

:272:   BROWN

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all

-6(PA) (0502)                    Page 12 of 16                    Initials: _A.B_                    Form 3039  1/01

:272:    BROWN

expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

VMP -6(PA) (0502)       Page 13 of 16       Initials: _AB_       Form 3039  1/01

:272:       BROWN

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

:272:      BROWN

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            AUDREY G BROWN                    -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____ (Seal)   _____ (Seal)
                           -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                           -Borrower                                          -Borrower

_____ (Seal)   _____ (Seal)
                           -Borrower                                          -Borrower

VMP -6(PA) (0502)                Page 15 of 16                     Form 3039  1/01

:272:      BROWN

**COMMONWEALTH OF PENNSYLVANIA,** *Philadelphia* County ss:

On this, the *7* day of *July 2006*, before me, the undersigned officer, personally appeared *Audrey G Brown*

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

*Notary Public*
Title of Officer

Notarial Seal
Michael T. Connor, Notary Public
City of Philadelphia, Philadelphia County
My Commission Expires July 8, 2006

**Certificate of Residence**

I, *Amanda Legeion*, do hereby certify that the correct address of the within-named Mortgagee is *304 Virginia Dr. Fort Washington, PA 19034*

Witness my hand this *18* day of *July 2006*

Agent of Mortgagee

Initials: *AB*

:272:   **BROWN**

Recording Requested By/Return To:
**JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203**
(866) 756-8747

This Instrument Prepared By:
**JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203**

**52511095**
Page: 1 of 3
07/20/2012 09:17AM

This Document Recorded
07/20/2012
09:17AM
Doc Code: A

Doc Id: 52511095
Receipt #: 1136527
Rec Fee: 198.00
07/20/2012 09:17AM
Commissioner of Records, City of Philadelphia

**Parcel Identification Number:**

———— [Space Above This Line For Recording Data] ————

**Loan Number**

## ASSIGNMENT OF MORTGAGE

For Value Received, **CHASE BANK USA, NATIONAL ASSOCIATION** (herein "Assignor") whose address is **700 KANSAS LANE, MC 8000, MONROE, LOUISIANA 71203**, does hereby grant, sell, assign, transfer and convey, unto **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, its successors and assigns (herein "Assignee"), whose address is **700 KANSAS LANE, MC 8000, MONROE, LOUISIANA 71203**, a certain Mortgage dated **JULY 07, 2006**, made and executed by **AUDREY G BROWN, WIDOW**, to and in favor of **CHASE BANK USA, N.A.,** upon the following described property situated in **PHILADELPHIA**, County, Commonwealth of **PENNSYLVANIA**:

Property Address: **4238 NORTH FRANKLIN ST, PHILADELPHIA, PENNSYLVANIA 19140**

such Mortgage having been given to secure payment of **$34,000.00** (original principal amount), which Mortgage is of record on **AUGUST 10, 2005**, in Book, Volume, or Liber No. N/A, at page N/A (or as No. 51506313) of the Records of the Office of the Recorder of Deeds of **PHILADELPHIA**, County, Commonwealth of **PENNSYLVANIA**.

Assignment of Mortgage                                                                 Page 1 of 2

Loan Number _____

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on __05-04-2012_____.

**CHASE BANK USA, NATIONAL ASSOCIATION**

By: _Elena Hoyuc_____ (Seal)

Name: _Elma Hoyuc_____

Title: _Vice President_____

### CERTIFICATE OF RESIDENCE OF ASSIGNEE

I certify that the precise address of the within-named Assignee is: **700 KANSAS LANE, MC 8000, MONROE, LOUISIANA 71203**.

_Elena Hoyuc_____
Name: _Elma Hoyuc_     05/04/12
Agent of Assignee

--Space Below This Line Reserved for Acknowledgement--

State of **FLORIDA**
County of **DUVAL**

The foregoing instrument was acknowledged before me this _____04_____ day of ___05_____, 2012_, by _Elma Hoyuc_____ as _Vice President_____ for **CHASE BANK USA, NATIONAL ASSOCIATION**, a **NATIONAL ASSOCIATION**, on behalf of the **NATIONAL ASSOCIATION**.

_Shannon D. Leebr_____
Notary Public

(SEAL)

Serial number, if applicable _____

Personally known _____✓_____
OR Produced Identification _____
Type of Identification Produced, if applicable _____

SHANNON D. LEEFER
Commission # EE _____
My Commission Expires 08-19-2015
Bonded Through
Western Surety Company

Assignment of Mortgage

Page 2 of 2

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected. SITUATE on the West side of North Franklin Street at the distance of Two hundred and ninety West Six inches Northwardly from the North side of Hunting Park Avenue One Hundred feet wide in the Forty-third Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said North Franklin Street fifteen feet three inches and extending of that width in length or depth Westwardly between lines parallel with Hunting Park Avenue Sixty feet Six inches to a certain three feet wide alley leading Southwardly into the said Hunting Park Avenue.

TOGETHER with the free and common use, right, liberty and privilege of the above mentioned three feet wide alley as and for a passageway and watercourse at all times hereafter, forever.

BEING the same premises which John McAnany and Mary, his wife, by Deed dated 6/4/48 and recorded in Philadelphia County, in Deed Book CJP 2052 page 248 conveyed unto George F. Lodge and Isabelle E., his wife, in fee.

UNDER AND SUBJECT to restrictions as of record.

UNDER AND SUBJECT TO:

Building and use restrictions set forth in Deed Book GGP 502 page 266.

Case 17-16087-mdc   Claim 7-2   Filed 05/16/18   Desc Main Document   Page 29

FN [redacted]

Recorded in Philadelphia PA Doc Id: 53396113
11/20/2013 05:18PM   Receipt#: 1549583
Page 1 of 3                   Rec Fee: $220.00
Commissioner of Records   Doc Code: A
State RTT:    Local RTT:

**Prepared By:**
**PEIRSONPATTERSON, LLP**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**
**800-899-9027**

**After Recording Please Return To:**
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**
**800-899-9027**

UPI/PIN/Tax ID: ▇▇▇▇▇▇▇

———————————————[Space Above This Line For Recording Data]———

FN ▇▇▇▇▇▇▇▇▇▇

# PENNSYLVANIA ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX  75254**, a certain Mortgage dated **July 7, 2006** and recorded on **August 10, 2006**, made and executed by **AUDREY G BROWN**, to and in favor of **CHASE BANK USA, N.A.** upon the following described property situated in **PHILADELPHIA** County, Commonwealth of Pennsylvania:
Property Address: **4238 NORTH FRANKLIN STREET, PHILADELPHIA, PA 19140**

**ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE ON THE WEST SIDE OF NORTH FRANKLIN STREET AT THE DISTANCE OF TWO HUNDRED AND NINETY FEET SIX INCHES NORTHWARDLY FROM THE NORTH SIDE OF HUNTING PARK AVENUE ONE HUNDRED FEET WIDE IN THE FORTY THIRD WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID NORTH FRANKLIN STREET FIFTEEN FEET THREE INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARDLY BETWEEN LINES PARALLEL WITH HUNTING PARK AVENUE SIXTY FEET SIX INCHES TO A CERTAIN THREE FEET WIDE ALLEY LEADING SOUTHWARDLY INTO THE SAID HUNTING PARK AVENUE,**
**TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ABOVE MENTIONED THREE FEET WIDE ALLEY AS AND FOR A PASSAGEWAY AND WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.**
**TAX ID 43-3339800**

———————————————————————————————————————————

Pennsylvania Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3115          **Page 1 of 3**

such Mortgage having been given to secure payment of **Thirty Four Thousand and 00/100ths ($34,000.00)**, which Mortgage is of record in Book, Volume or Liber No. N/A, at Page N/A (or as No. 51506313), in the Office of the Recorder of Deeds of **PHILADELPHIA** County, Commonwealth of Pennsylvania.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 6 - 2 - 15 .



Assignor:
**JPMorgan Chase Bank, National Association**

By: _____
Raul Johnson

Its: _____ **Vice-President** _____

Certificate of Residence:

I/We do hereby certify that the precise address of the within named mortgagee, assignee or person entitled to interest is **14221 Dallas Parkway, Suite 100, Dallas, TX 75254.**

**JPMorgan Chase Bank, National Association as assignee or agent for assignee**

By: _____
Raul Johnson

Its: _____ **Vice-President** _____

---

**Pennsylvania Assignment of Mortgage**
**JPMorgan Chase Bank N.A. Project W3115**          **Page 2 of 3**

# ACKNOWLEDGMENT

State of **Louisiana**                                              §
                                                                   §
Parish of **Ouachita**                                             §

On    this    2    day    of    June    2015    , before    me    appeared
_____Raul Johnson_____, to me personally known, who,
being by me duly sworn (or affirmed) did say that he/she is the _____Vice-President_____, of
**JPMorgan Chase Bank, National Association,** and that the seal affixed to said instrument is the corporate
seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its
board of directors and that _____Raul Johnson_____ acknowledged
the instrument to be the free act and deed of the said entity.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

Signature of Officer
*Y. K. Wilson*

Printed Name
*Notary Public*

Title of Officer

(Seal)                                    My Commission Expires:    *Lifetime*